UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80954-Civ-MARRA/SELTZER

FAIR HOUSING CENTER OF THE
GREATER PALM BEACHES, INC.

    Plaintiff

vs.

CORNERSTONE RESIDENTIAL MANAGEMENT,
LLC, LANTANA ASSOCIATES, LTD, ISABELA
SOLOMOS, CORNERSTONE PALM SPRINGS, LLC,
PENELOPE MARTINEZ, BEAR LAKES ACQUISITIONS,
LTD, ELSIE ORTIZ, INDIAN TRACE ASSOCIATES, LTD
and YESENIA COLON

    Defendants.
_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon Defendants' Motion to Strike [DE 13]. The motion is fully briefed and ripe for review. The Court has carefully considered the Complaint For Declaratory Judgment, Permanent Injunctive Relief and Damages, the instant motion, response, reply, sur-reply, and the entire Court file.

Defendants' Motion to Strike is essentially a motion to dismiss certain allegations in the Fair Housing Center of the Greater Palm Beaches, Inc.'s ("FHC" or "Plaintiff") Complaint. Defendants move to strike complaint paragraphs 17-20, 29, 30 and 31, on the basis that FHC does not have standing to challenge Defendants' receipt of tax credits through the Low Income Housing Tax Credit ("LIHTC") program. "In essence, [FHC]'s prayer for relief seeks to enforce contractual rights that belong

only to Florida Housing Finance Corporation." DE 13 at 4-5. The paragraphs at issue allege the following:

17. "Villas at Cove Crossing Apartments, Portofino Apartments, Renaissance Apartment, and Indian Trace Apartments, were developed under various Government Assisted Housing Programs to include, Low Income Housing Tax Credit ("LIHTC"), Multifamily Bonds (MMRB), State Apartment Incentive Loan (SAIL), Florida Affordable Housing Guarantee Program and Florida Housing Finance Corporation Multifamily HUD Risk-Sharing Program (FHA). The Housing Credit program is governed by the U.S. Department of Treasury under Section 252 of the Tax Reform Act of 1986 and Section 42 of the Internal Revenue Code, as amended."

18. "Owners are required to certify annually, (Owner's Certification of Continuing Program Compliance) under penalty of perjury, that they are in compliance with the local, state and federal Fair Housing laws, Treasury Regulations, the applicable State Allocation Plan, and all other applicable laws, rules and regulations."

19. "Tax and financing benefits received for the development of the above multifamily housing complexes were provided under guidelines that would provide affordable housing to median and low income "families" and "large families" and under which all owners, managers and agents are mandated to implement policies and procedure that comply with state, local and federal

Fair Housing laws."

20. "Defendants own, operate and/or manage several other property holdings and ventures throughout the state of Florida, including other multifamily projects, which have been or will be assisted with tax credits and/or low interest loans provided by government multifamily programs meant to provide housing for median to low-income households."

29. "FHC found that Defendants disregarded the LIHTC Multifamily Rental Income Guidelines administered by Florida Housing Finance . . ."

30. Defendants "intentionally discarded the maximum income eligibility of $43,680 . . ." set by the Florida Housing Finance Corporation.

Plaintiff's prayer for relief seeks that "the Court reassess Defendants' participation in any and all projects in which they have been granted benefits under the LIHTC multifamily program or any other state or federal program, to determine whether Defendants must reimburse advanced benefits arising out of the violations of the Fair Housing Act."

Defendants argue that Plaintiff does not have standing to challenge Defendants' award of tax credits through the LIHTC program, or other federal aid in the form of loans, grants, advances or contributions.  Plaintiff responds by asserting that it has standing to bring claims on behalf of its members who are consumer tax payers whose tax dollars fund the Low Income Housing Tax Credits and other government programs.

As a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with government program parameters, such as the Low Income Housing Tax Credit Program, does not give rise to the kind of redressable "personal injury" required for Article III standing.  The Supreme Court dealt with standing in the context of a matter involving taxpayers in *Hein v. Freedom From Religion Foundation, Inc.*, 127 S.Ct. 2553, 2563 -2564 (2007).[1]  It held that the constitutionally mandated standing inquiry is especially important in a case in which taxpayers seek to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens.  This is because "the judicial power of the United States defined by Art. III is not an unconditioned authority to determine the constitutionality of legislative or executive acts." *Id.* at 2562 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)).  This Court is not empowered to seek out and strike down any governmental act that it deems to be incongruent with federal housing program standards.  Rather, federal courts sit solely, to decide on the rights of individuals, and must refrain from judging the administration of a tax credit program unless obliged to do so in the proper performance of its judicial function,

---

[1] *See also Flast v. Cohen*, 392 U.S. 83, 114 (1968); *Frothingham v. Mellon*, decided with *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923) ("The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally").

when the question is raised by a party whose interests entitle him to raise it.  *Valley Forge Christian College*, 454 U.S. at 474.

While a taxpayer may have standing to challenge the collection of a specific tax assessment as unconstitutional; being forced to pay such a tax causes a real and immediate economic injury to the individual taxpayer.  *Id*.  But that is not the interest on which FHC asserts standing here.  Rather, FHC's claim is that, based on its members having paid lawfully collected taxes into the Federal Treasury at some point, it has a legally cognizable interest in ensuring that Cornerstone Group, a recipient of tax and financing benefits, complies with state, local and federal fair housing laws.  Standing has been rejected in such cases because the alleged injury is not "concrete and particularized," *Defenders of Wildlife*, 504 U.S. 555, 560 (1992), but instead a grievance the taxpayer "suffers in some indefinite way in common with people generally," *Frothingham*, 262 U.S. at 488.  In addition, the injury is not "actual or imminent," but instead "conjectural or hypothetical." *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342-44 (2006) (Ohio taxpayers did not have Article III standing to challenge award of state franchise tax credit to automobile manufacturer to induce it to remain in city simply by virtue of taxpayer status).

Subparagraph (d) of Plaintiff's prayer for relief asks the Court to "**reassess** Defendants' participation in any and all projects in which they have been granted benefits under the LIHTC multifamily program or any other **state or federal program** [and], to **determine** whether Defendants must **reimburse advanced benefits** arising

out of the violations of the Fair Housing Act" (emphasis supplied).  The benefits which Plaintiff seeks to have "reassessed" are tax credits.  FHC cannot enforce what it perceives as violations of Florida Housing Finance Corporation's tax credit program because this Court cannot grant the relief sought by Plaintiff.  The Declaratory Judgment Act precludes federal courts from issuing declaratory judgments with regard to the assessment or collection of federal taxes.  28 U.S.C.A. § 2201(a); *KPMG Peat Marwick v. Texas Commerce Bank*, 976 F. Supp. 623 (S.D. Tex. 1997);  *Mohler v. U.S.*, 1995 WL 724557, *3 (D . Ore. Nov. 3, 1995).  Because the interests of the taxpayer are, in essence, the interests of the public-at-large, deciding a claim based solely on taxpayer standing "would be[,] not to decide a judicial controversy, but to assume a position of authority over the governmental acts of another and co-equal department, an authority which plainly we do not possess." *Frothingham*, 262 U.S. at 489; *see also Alabama Power Co. v. Ickes*, 302 U.S. 464, 478-479 (1938).

     In their sur-reply, Plaintiffs emphasize that they are not bringing this action against the United States government or the Internal Revenue Service and they do not seek a judicial declaration that a particular tax is illegal.  Instead, Plaintiffs assert, they "simply request[] that Defendants, which are private corporations, reimburse benefits that Defendants have received under various fair housing programs, if [it] is proven that Defendants failed to honor the Fair Housing Act, in light of the fact that compliance with the FHA was a condition precedent to obtaining these various benefits from these various programs."  DE 46, ¶ 19.

This argument does resolve the standing issue.  Plaintiffs do not stand to benefit from the relief they seek.  The most they can realize is the satisfaction that federal funds are not misused.  Absent statutory authorization, this is not enough to confer standing.  *Gonzaga University v. Doe*, 536 U.S. 273, 276 (2002).  They must show some stake in the outcome.  *See Flast v. Cohen*, 392 U.S. 83, 96 (1968).  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Strike [DE 13] is **GRANTED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 16th day of September, 2008.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:

All counsel of record